IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ADAM P. FAUST,
CHRISTOPHER C. BAIRD,
JONATHAN P. STEVENS,
JAY T. SLABA, JOSEPH W. SCHMITZ,
JAMES C. ASH, CHERYL J. ASH,
CHRISTOPHER D. BOHNENKAMP,
LORI L. WATKINS, TEENA J. BANDUCCI,
BRANDON D. BANDUCCI, and
THEODORE G. SHIELDS, JR,

      Plaintiffs,                    1:21-cv-00548-WCG

  v.

THOMAS J. VILSACK, and
ZACH DUCHENEAUX

      Defendants.

## AMENDED COMPLAINT

Plaintiffs allege their complaint against Defendants as follows:

## INTRODUCTION

1. "The Constitution abhors classifications based on race . . . because every time the government places citizens on racial registers and makes race relevant to the provision of burdens or benefits, it demeans us all." *Grutter v. Bollinger*, 539 U.S. 306, 353 (2003) (Thomas, J., concurring in part and dissenting in part). "Purchased at the price of immeasurable human suffering, the equal protection principle reflects our Nation's understanding that such classifications ultimately have a destructive impact on the individual and our society." *Adarand*

1

*Constructors, Inc. v. Peña*, 515 U.S. 200, 240 (1995) (Thomas, J., concurring in part and concurring in judgment).

2. In March 2021, the United States retreated from the principle of equality under the law by enacting a race-based loan-forgiveness program in the American Rescue Plan Act of 2021 (ARPA). Among other things, ARPA provides billions of dollars of debt relief to "socially disadvantaged" farmers and ranchers. The phrase "socially disadvantaged" includes explicit racial classifications: to be eligible for ARPA's debt relief, farmers and ranchers must be Black or African American, American Indian or Alaskan native, Hispanic or Latino, or Asian American or Pacific Islander. Other farmers—white farmers, for example—are ineligible.

3. Plaintiffs are farmers from Wisconsin, Minnesota, South Dakota, Ohio, Missouri, Iowa, Arkansas, Oregon, and Kentucky who have direct loans with the Farm Service Agency (FSA) or loans backed by the United States Department of Agriculture (USDA). They are otherwise eligible for the loan-forgiveness program in ARPA, except for the color of their skin. As white farmers, Plaintiffs are ineligible for this government benefit.

4. Defendants are responsible for running this race-based loan-forgiveness program through USDA and FSA. Defendants assert that the purpose of this program is to remedy "systemic racism" in USDA and "across agriculture." In other words, Defendants are attempting to cure societal discrimination—they

specifically disavow that they are attempting to remedy "specific acts of discrimination."

5. The United States Constitution "forbids" discrimination by the federal government "against any citizen because of his race." *Adarand Constructors, Inc.*, 515 U.S. at 216 (citations omitted). Any classifications based on race, therefore, must "be subjected to the most rigid scrutiny." *Id* (citation omitted). So, when the government distributes "benefits on the basis of individual racial classifications," as Defendants do in this case, the government bears the burden of meeting "strict scrutiny." In other words, the government must prove that its discriminatory benefit is narrowly tailored and serves a compelling government interest. *Id.* at 227.

6. While Defendants' public statements about ARPA describe their generalized goal of ending "systemic racism," such broad goals do not override the constitutional ban on race discrimination. In fact, the Supreme Court has "rejected the interest in remedying societal discrimination because it had no logical stopping point." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 318 (2013). In short, "[t]he way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007).

7. Defendants' use of race discrimination as a tool to end "systemic racism," is therefore unconstitutional and should be enjoined by this Court.

## THE PARTIES

8. Plaintiff Adam P. Faust owns a dairy farm in Calumet County, near Chilton, in the Northern Division of the Eastern District of Wisconsin. Mr. Faust is a double-amputee. In addition to milking about 70 Holstein cows, Mr. Faust farms 200 acres for feed for his cows. Mr. Faust would be eligible for the loan forgiveness program in Section 1005 of ARPA, except that he is white.

9. Plaintiff Christopher C. Baird owns a dairy farm near Ferryville in Crawford County, Wisconsin. Just ten miles from the Mississippi River, Mr. Baird milks over 50 Jersey cows and farms approximately 80 acres of pasture. He has three direct loans with FSA and would otherwise be eligible for the loan-forgiveness program in Section 1005 of ARPA, except that he is white.

10. Plaintiff Jonathan P. Stevens owns Maple Grove Farms near Rock Creek, Minnesota. Mr. Stevens raises about 25 beef cattle and grows corn, soybeans, and other crops on about 700 acres. He has two direct loans with FSA and would otherwise be eligible for the loan-forgiveness program in Section 1005 of ARPA, except that he is white.

11. Plaintiff Jay T. Slaba raises about 350 head of beef cattle and farms around 1,000 acres of corn and other crops in northwest South Dakota. Mr. Slaba has two outstanding direct loans with FSA: an equipment loan and a first-time landowner loan. Mr. Slaba would be eligible for the loan-forgiveness program in Section 1005 of ARPA, except that he is white.

12. Plaintiff Joseph W. Schmitz farms approximately 50 acres of corn and soybeans in western Ohio. He is a first-time farmer and has an FSA direct loan. Mr.

Schmitz would otherwise be eligible for the loan forgiveness provisions of Section 1005 of ARPA, except that he is white.

13. Plaintiffs James C. and Cheryl J. Ash own and operate Hog Heaven Farms near Jasper, Missouri. The Ashes raise about 600 sows and ween up to 1,000 piglets every 28 days. The Ashes have an FSA farm loan and are otherwise eligible for the loan forgiveness program in Section 1005 of ARPA, except that they are white.

14. Plaintiff Christopher D. Bohnenkamp grows corn and soybeans in northwestern Iowa. Mr. Bohnenkamp also owns and operates a feeder-to-finish swine operation, where he feeds up to 2,400 hogs every three months. Mr. Bohnenkamp has an FSA-direct loan and is otherwise eligible for the loan forgiveness program in Section 1005 of ARPA, except that he is white.

15. Plaintiff Lori L. Watkins raises chickens, cattle, sheep, and goats on a 100-acre farm in southwestern Arkansas. Ms. Watkins' primary business is raising and selling about 500,000 broiler chickens each year. She has a USDA-backed loan on her four chicken houses, and four other FSA-direct loans. Ms. Watkins is otherwise eligible for the loan forgiveness program in Section 1005 of ARPA, except that she is white.

16. Plaintiffs Teena J. and Brandon D. Banducci are ranchers from northeast Oregon. They raise about 100 cattle on approximately 1,000 acres. The Banduccis have FSA loans and would otherwise be eligible for the loan forgiveness program in Section 1005 of ARPA, except they are white.

17. Plaintiff Theodore ("Ted") G. Shields, Jr. is a fourth-generation tobacco farmer from central Kentucky. Mr. Shields farms approximately 700 acres. In addition to burley tobacco, Mr. Shields farms corn and soybeans and raises about 80 head of cattle. He has a direct loan from USDA and would otherwise be eligible for the loan forgiveness program in Section 1005 of ARPA, except that he is white.

18. Defendant Thomas J. Vilsack is the Secretary of Agriculture. He is responsible for leading the USDA, which includes the FSA. Under Section 1005 of ARPA, Defendant Vilsack is required to provide debt relief to certain farmers based on race. He is sued in his official capacity.

19. Defendant Zach Ducheneaux is the Administrator of the FSA. Among other things, FSA oversees certain loan programs. Under Section 1005 of ARPA, FSA will provide debt relief to certain farmers with direct loans or USDA-back loans based on race. He is sued in his official capacity.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this complaint under 28 U.S.C. § 1331, § 2201, and 5 U.S.C. § 702, because this case presents a substantial question of federal law, specifically whether Section 1005 of ARPA—and Defendants' implementation of that section—violates the United States Constitution's guarantee of equal protection of the laws.

21. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper, including nominal damages, pursuant to 28 U.S.C. § 2201 and 2202.

22. Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, Defendants maintain one or more offices and employees in this district, a substantial part of the property subject to this action is situated in this district, and a plaintiff resides in this district.

**STATEMENT OF CLAIM**

23. On March 11, 2021, the President of the United States signed ARPA into law.

24. Through Section 1005 of ARPA, Congress appropriated "such sums as may be necessary" to pay for the cost of loan modifications and payments for "each socially disadvantaged farmer or rancher as of January 1, 2021."

25. Section 1005(a) requires Defendant Vilsack to use the appropriated funds to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021."

26. A "socially disadvantaged farmer and rancher" has "indebtedness" if that farmer or rancher owes money on a "direct farm loan made by the Secretary" or a "farm loan guaranteed by the Secretary." *See* ARPA, Section 1005(a)(2).

27. Finally, Section 1005(a)(3) states that "the term 'socially disadvantaged farmer or rancher' has the meaning given in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a))." That Act explains that the term "socially disadvantaged group" "means a group whose

7

members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(5) & (6).

28. Defendant Vilsack and Defendant Ducheneaux are responsible for the implementation of the loan forgiveness provisions in ARPA Section 1005.

29. On March 25, 2021, Defendant Vilsack offered written testimony to the House of Representatives Committee on Agriculture. Defendant Vilsack testified that "systemic racism" has "plague[d] the programs at the USDA, especially the Farm Loan Program." According to Defendant Vilsack, ARPA "provides funding to address longstanding racial equity issues within the Department and across agriculture." This funding, according to Defendant Vilsack, will "respond to the cumulative impacts of systemic discrimination and barriers to access that have created a cycle of debt." Defendant Vilsack argued that prior efforts to remedy "specific, individualized discrimination" have "failed to do the necessary work" needed to address the "systemic discrimination [that] socially disadvantaged producers face."

30. In oral testimony, Defendant Vilsack stated that the purpose of ARPA's loan-forgiveness provisions was to respond to the "cumulative impact of discrimination over time" and not to address "specific acts of discrimination." Defendant Vilsack also testified that aid would be distributed "based on race and ethnicity, and that although "white women" were considered socially disadvantaged in the past, they no longer were under ARPA.

31. Defendant Vilsack testified that between 13,000 and 15,000 loans would be forgiven, and USDA will disburse up to $4 billion in loan forgiveness to non-white farmers.

32. As for timing and process, Defendant Vilsack said that USDA would forgive loans by paying off the loan and then sending 20% of the value of the loan directly to farmers. Defendant Vilsack did not indicate that a farmer would need to take any affirmative step to obtain this benefit. Defendant Vilsack explained that some loans ("direct loans") could be forgiven quickly because USDA was the lender. He said these loans are "relatively simple and straightforward" and the loan will be "paid off [and] 20 percent goes to the farmer." Other loans ("guaranteed loans"), however, may take longer because USDA may have to work directly with banks to sort out issues like pre-payment penalties. Defendant Vilsack testified that USDA has already started to reach out to banks, collect information, and has instructed them, by way of a letter dated March 25, 2021, to "take no further action whatsoever to enforce" the terms of USDA-guaranteed loans. Defendant Vilsack repeatedly testified that ARPA's loan forgiveness provisions would be implemented "as quickly as possible."

33. On March 26, 2021, Defendant Ducheneaux authored a blog post detailing how FSA intends to implement Section 1005 of ARPA. *See* Zach Ducheneaux, "American Rescue Plan Socially Disadvantaged Farmer Debt

9

Payments," (March 26, 2021).[1] According to this document, "USDA recognizes that socially disadvantaged farmers and ranchers have faced systemic discrimination with cumulative effects that have, among other consequences, led to a substantial loss in the number of socially disadvantaged producers, reduced the amount of farmland they control, and contributed to a cycle of debt that was exacerbated during the COVID-19 pandemic."

34. Defendant Ducheneaux explained that through ARPA, FSA will provide "historic debt relief to socially disadvantaged producers including Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

35. According to Defendant Ducheneaux, "[a]ny socially disadvantaged borrower with direct or guaranteed farm loans as well as Farm Storage Facility Loans qualifies." Defendant Ducheneaux defines "socially disadvantaged" borrowers as only those borrowers "with direct or guaranteed farm loans as well as Farm Storage Facility loans" and who are members of one or more of the following racial groups: "Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

36. Despite the fact that USDA previously and nearly uniformly defined "women" as "socially disadvantaged," *see e.g.,* 7 C.F.R. §§ 761.2; 7.3; 1430.402, Defendant Ducheneaux explained on March 26, 2021, that USDA, the Farm Service Agency, and Defendants no longer believe that women farmers and ranchers qualify

---

[1] *Available at* https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments

10

as "socially disadvantaged farmers and ranchers." According to Defendant Ducheneaux, "[g]ender is not a criteria [*sic*] in and of itself, but of course women are included in these categories."

37. On or about April 12, 2021, USDA updated its website to provide further information about the payments under Section 1005 of ARPA. The website confirms that only certain farmers will be eligible based on race: "Eligible borrowers include those who identify as one or more of the following: Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asian American, or Pacific Islander."[2]

38. USDA also confirmed that eligible loans are those: "Made directly by FSA, including Farm Storage Facility Loans, Direct Farm Ownership Loans, Farm Operating Loans, including Microloans and Youth Loans, Emergency Loans, Conservation Loans, and Soil and Water Loans; and Guaranteed by FSA and made by an approved lender, including Farm Ownership Loans, Farm Operating Loans, and Conservation Loans."

39. Furthermore, on or about April 12, 2021, USDA updated its website entitled "American Rescue Plan Debt Payments FAQ."[3] Again, on this website, USDA confirms as follows: "The American Rescue Plan Act uses Section 2501 of the Food, Agriculture, Conservation, and Trade Act of 1990 as the definition of socially disadvantaged farmers and ranchers, which includes those who identify as one or

---

[2] *Available at* https://www.farmers.gov/americanrescueplan

[3] *Available at* https://www.farmers.gov/americanrescueplan/arp-faq

11

more of the following: Black, American Indian/Alaska Native, Hispanic, Asian, and Hawaiian/Pacific Islander."

40. Finally, USDA confirmed that "[n]o action on your part is needed right now" with regard to this loan-forgiveness program. In other words, Defendants will begin the process of forgiving loans automatically and there is no application process or other formal process required to trigger the payment of benefits on behalf of farmers. The FAQ website explains, "FSA is currently compiling and analyzing balances for all types of loans and is determining the quickest and most efficient way to make payments. Once the payment process has been finalized, all direct and guaranteed borrowers will receive a written notification from FSA explaining the payment process."

41. To determine eligibility for the loan-forgiveness provision of Section 1005 of ARPA, Defendants will use data submitted by farmers on form AD-2047, despite the clear indication on this form that "[d]emographic information is used by USDA for statistical purposes only and will not be used to determine an applicant's eligibility for programs or services for which they apply."

42. Defendants' form, AD-2047, also contains their admission that "the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation

12

for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs)."

43. Defendants are currently implementing and will continue to implement Section 1005 of ARPA to impose a race-based loan forgiveness program. Defendants implementation includes the expenditure of federal funds, and Defendants could begin forgiving loans at any moment, if they have not already started.

44. Plaintiffs are farmers who have FSA direct farm loans or USDA-backed loans and are otherwise eligible for loan forgiveness under Section 1005 of ARPA.

45. But because Plaintiffs are white, they are ineligible for the loan forgiveness benefit under Section 1005 of ARPA as administered by Defendants.

46. Were Plaintiffs eligible for the loan forgiveness benefit, they would have the opportunity to make additional investments in their property, expand their farms, purchase equipment and supplies, and otherwise support their families and local communities.

47. Because Plaintiffs are ineligible to apply for or otherwise participate in the program solely due to their race, they have been denied the equal protection of the law and therefore suffered harm.

48. Plaintiffs are also harmed because, as taxpayers to the United States treasury, their taxes have been used, and continue to be used, to implement this unconstitutional program.

## CAUSE OF ACTION
## EQUAL PROTECTION VIOLATION

49. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

50. The Constitution forbids "discrimination by the general government . . . against any citizen because of his race." *Gibson v. State of Mississippi*, 162 U.S. 565, 591 (1896). "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

51. "[A]ll racial classifications imposed by government must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation omitted). "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Id.* (citation omitted).

52. Section 1005 of ARPA imposes racial classifications. Farmers or ranchers with direct farm loans, guaranteed farm loans, or Farm Storage Facility Loans qualify for loan forgiveness only if they are members of one of the following racial groups: Black/African American, American Indian or Alaskan native, Hispanic or Latino, or Asian American or Pacific Islander.

53. Defendants are responsible for interpreting and implementing Section 1005 of ARPA.

54. Although Plaintiffs are farmers with direct FSA loans and USDA-backed loans, and otherwise eligible for the loan forgiveness program under Section 1005 of ARPA, they are ineligible for this federal benefit because they are white.

55. Plaintiffs are harmed by the Defendants' racial classifications because if Plaintiffs were not white, they would be eligible for up to 120% of the value of their outstanding debt and they would use that money to benefit their farm, family, and local community.

56. In addition, Plaintiffs have been harmed because Defendants have treated them differently based on their race.

57. The racial classifications under Section 1005 of ARPA are unconstitutional because they violate the Equal Protection guarantee in the United States Constitution.

58. The racial classifications under Section 1005 of ARPA are not narrowly tailored to serve a compelling government interest.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

A. Enter a temporary and preliminary injunction preventing Defendants from applying racial classifications when determining eligibility for loan modifications and payments under Section 1005 of ARPA.

B. Enter a declaratory judgment that the racial classifications under Section 1005 of ARPA are unconstitutional.

C. Enter an order permanently enjoining Defendants from applying racial classifications when determining eligibility for loan modifications and payments under Section 1005 of ARPA.

D. Award Plaintiffs such costs and attorney fees as allowed by law.

E. Grant Plaintiffs such other and further relief as the court deems appropriate.

WISCONSIN INSTITUTE FOR LAW & LIBERTY, INC.
Attorneys for Plaintiffs

Rick Esenberg
rick@will-law.org

Dated: May 19, 2021        */s/ Daniel P. Lennington*

Daniel P. Lennington
dan@will-law.org
Luke Berg
luke@will-law.org
Kate Spitz
kate@will-law.org
330 E. Kilbourn, Suite 725
Milwaukee, WI 53202-3141
PHONE: 414-727-9455
FAX: 414-727-6385