IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ADAM P. FAUST et al.,

    Plaintiffs,

v.                                Case No. 1:21-cv-00548-WCG

THOMAS J. VILSACK et al.,

    Defendants.

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

Defendants' response late last night demonstrates the urgent need for a temporary restraining order. Defendants represented that they have already started forgiving loans and will begin sending more offer letters *today* to 8,580 farmers, Dkt. 17-2, ¶ 32. They further represent that it will take "an average of 7 days" to receive an accepted offer, Dkt. 17-2, ¶ 31, and that FSA can and will process payment immediately upon receipt of an accepted offer, Dkt. 17-2, ¶¶ 29–30. Based on their affidavit, those 8,580 farmers represent approximately 49% of the loans that will be forgiven under the program.[1] Thus, without a temporary restraining order, almost *half* of the money budgeted for the farm loan forgiveness program could be spent before the government *even responds* to the preliminary injunction motion.

---

[1] FSA says that the "loans covered by the May 2021 NOFA comprise 88% of the total ARPA-eligible payments," Dkt. 17-2, ¶ 25, and that this group to date includes "15,416 eligible Farm Loan Program direct loan accounts," Dkt. 17-2, ¶ 22. 8,560 is 55% of 15,416, and 55% of 88% is 49%.

While Defendants admit to this blitz of loan forgiveness in the face of five separate federal lawsuits in five different district courts,[2] Defendants also acknowledge that, as a matter of policy, they are in no real hurry. *See* Dkt. 17-2, ¶¶ 17–18 (describing USDA's generous deadline periods for non-white farmers and ranchers to respond to USDA's initial letters). In fact, Defendants have offered no argument as to why the final act of loan forgiveness (plus a 20% payment) cannot be put on hold pending a resolution of the preliminary injunction motion. Plaintiffs are not asking Defendants to stop all work, such as mailing notices, accepting paperwork, reviewing applications and relevant documents, and making other necessary calculations. Plaintiffs are simply asking that this Court put on hold the final act of payment, which Defendants admit will happen in real time as this Court is considering the pending motion for preliminary injunction. Indeed, even Defendants suggest that this Court can halt final payments without putting a hold on everything else. Dkt. 17:23 n.14.

Defendants argue that there is no imminent harm if a significant portion of the budgeted funds are spent before this Court can rule on a preliminary injunction because the amount budgeted for Section 1005 is "such sums as may be necessary," rather than a fixed fund, suggesting (without saying) that Plaintiffs could later have their loans forgiven if the racial categorization is struck down. Dkt. 17:13–14. But the *only* criteria for eligibility is the race of the farmer or rancher, as Defendants admit,

---

[2] In addition to this case, Defendants face nearly identical race discrimination allegations in *Carpenter v. Vilsack*, No. 21-cv-103 (D. Wy., filed May 24, 2021); *Holman v. Vilsack*, No. 21-cv-1085 (W.D. Tenn., filed June 2, 2021); *Miller v. Vilsack*, No. 21-cv-595 (N.D. Tex., filed April 26, 2021); *Wynn v. Vilsack*, No. 21-cv-514 (M.D. Fla., filed May 18, 2021).

and this is a one-time program. Thus, merely eliminating the racial criteria would require USDA to forgive the loans of *every farmer* in the United States. According to USDA's most recent census of agriculture, this would increase the cost of the program roughly 100-fold, taking it from an estimated $4 billion program to a $400 billion program.[3] Defendants, notably, *do not concede* that this would be an available remedy, and undoubtedly they will oppose it. The proper remedy—and possibly the only remedy—is to enjoin the program and require Congress and/or USDA to fix it without relying exclusively on race. *See* Dkt. 14:26–27 (suggesting various possible fixes). Yet Congress and USDA will have no incentive to fix the program if a majority of the money has already been spent. Defendants have no meaningful response to this obvious point.

Even putting that point aside, the equal protection violation itself is an irreparable harm that warrants an immediate injunction, as multiple courts have recognized. Dkt. 14:23. Defendants attempt to distinguish some of these cases and argue that a presumption of harm is limited to other constitutional rights, but they have no good answer to the Sixth Circuit's recent decision in *Vitolo v. Guzman*, 2021 WL 2172181 at *8 (6th Cir. May 27, 2021), holding that irreparable harm was presumed for a challenge to a similar race-based program in the same Act, or to the D.C. Circuit's decision in *O'Donnell Const. Co. v. D.C.*, 963 F.2d 420, 428–29 (D.C.

---

[3] *See* USDA, 2017 Census of Agriculture, Table 61, Selected Farm Characteristics by Race, Section entitled "Commodity Credit Corporation (CCC) Loans and Federal Farm Program Payments," *available at* https://www.nass.usda.gov/Publications/AgCensus/2017/Full_Report/Volume_1,_Chapter_1_US/st99_1_0061_0061.pdf, and linked from https://www.nass.usda.gov/Publications/AgCensus/2017/Full_Report/Volume_1,_Chapter_1_US/

Cir. 1992), finding irreparable harm warranting a preliminary injunction for a challenge to a race-based, contract set-aside program. Nor do they even address the Supreme Court's recognition in *Shaw* and *Northeastern Florida Chapter of Associated General Contractors* that the primary injury "in an equal protection case … is the denial of equal treatment" itself. Dkt. 14:24 (citing cases).

Defendants' argument that there is no harm proves too much. Farming is a competitive business and, here, Congress has decided to provide a subsidy to one set of competitors based on race. Once the subsidy is paid, it cannot easily be retrieved. Certainly, had Congress decided to provide subsidies to only white farmers, those who were excluded would have standing to challenge the unconstitutional subsidy. And given that a subsidy once given is hard to get back (farmers who are told that their loan is forgiven or who are paid additional funds will understandably rely on the subsidy and likely invest in their farms or otherwise spend the money), failing to put a pause on the program so these grave constitutional concerns can be resolved threatens irreparable harm.

Furthermore, Defendants have not identified any significant harm to a short halt on payments while this Court considers the preliminary injunction, whereas Plaintiffs have shown—and Defendants now confirmed—that much of the budgeted funds will be spent in the interim without a temporary restraining order. The only harm to a temporary restraining order Defendants raise is the possibility that some farms will be foreclosed without immediate payment, Dkt. 17:19, but of course, Defendants *themselves* will not foreclose any such loans, and they have already

ordered banks holding USDA-backed loans *not to foreclose* those loans. *See* C-SPAN, Secretary Tom Vilsack, Oral Testimony Before the House Committee on Agriculture (Mar. 25, 2021) *available at* https://www.c-span.org/video/?510242-1/house-hearing-black-farmers-us (time marker 01:21:53) ("We have sent letters [to banks holding USDA-backed loans] that they are to take no further action to enforce or foreclose on farmers."). Thus, there is simply no risk of foreclosure during a short two-week temporary restraining order.

Elsewhere in their response, Defendants argue that there is no urgency because many other loan forgiveness payments are being processed on a much slower timetable. But Defendants cannot have it both ways. If Defendants can take "up to nine weeks" to process certain other loan-holders, Dkt. 17:6–7, and until this fall for yet others, Dkt. 17:6, without causing harm to those farmers, there is no reason a short, 2–3 week halt on payments, while this Court addresses the preliminary injunction motion, will cause any harm.

The vast mismatch in potential harms *alone* warrants a temporary restraining order. As the Seventh Circuit has explained, injunctions and stays should be evaluated using a "'sliding scale' approach [whereby] the greater the moving party's likelihood of success …, the less heavily the balance of harms must weigh in its favor, and *vice versa*." *See In re A & F Enterprises, Inc. II*, 742 F.3d 763, 768 (7th Cir. 2014). Indeed, in that case, the Court "rest[ed] [its] decision on whether to grant the stay primarily on the balance of potential harms."

As a backup, Defendants argue that "any temporary restraining order should be limited to plaintiffs," but they do not propose any workable order that could provide relief only to Plaintiffs. They suggest an order to "set aside funds sufficient to pay off any of Plaintiff[s'] qualified loans." Dkt. 17:22. But Defendants do not concede that an order from this Court to forgive Plaintiffs' loans is an available remedy—and they will likely oppose such a remedy later in this case, even if they lose, since, as explained above, it would effectively require USDA to forgive *every* farmer's loan, given that the only criteria is the race of the applicant. Moreover, if this Court were to issue an order limited to the named Plaintiffs, Plaintiffs could, and likely would, amend the complaint to add other farmers, requiring another round of emergency briefing and an expansion of the injunction to them as well. Plaintiffs' counsel has been contacted by about 100 farmers from around the country, most of whom would readily join a Second Amended Complaint. Still other farmers would be forced to file their own lawsuits, multiplying the burden on the federal court system.

Defendants also seem to argue that injunctions having a nationwide impact are somehow forbidden. They are not; the Seventh Circuit has expressly held that nationwide injunctions are authorized. *City of Chicago v. Barr*, 961 F.3d 882, 920–21 (7th Cir. 2020) ("courts have the authority to extend injunctive relief to non-parties"). Although rare, nationwide injunctions are appropriate in serious cases. *See, e.g., Decker v. O'Donnell*, 661 F.2d 598, 618 (7th Cir. 1980) (upholding a nationwide injunction even though factfinding focused on Milwaukee County, because the case had evolved to challenging the facial constitutionality with the evidence regarding

- 6 -
Case 1:21-cv-00548-WCG   Filed 06/09/21   Page 6 of 10   Document 19

Milwaukee County merely discussed as illustration); *Washington v. Reno*, 35 F.3d 1093, 1103–04 (6th Cir. 1994); *Cent. United Life Ins. Co. v. Burwell*, 827 F.3d 70, 73, 75 (D.C. Cir. 2016) (based on a challenge from a single insurance company, D.C. Circuit affirmed a permanent injunction invalidating ACA regulations prohibiting people from purchasing "stand-alone fixed indemnity plans"); *O'Donnell Const. Co. v. D.C.*, 762 F. Supp. 354, 356 (D.D.C. 1991) (individual plaintiff seeking an injunction "enjoining the District from using or enforcing race-based quotas and set-asides in the awarding of road construction contracts and subcontracts.") *reversed by* 963 F.2d 420 (reversing the district court and ordering the Court to "enter a preliminary injunction"); *Wirtz v. Baldor Elec. Co.*, 337 F.2d 518, 535 (D.C. Cir. 1963) ("we conclude that if one or more of the plaintiffs-appellees is or are found to have standing to sue, the District Court should enjoin the effectiveness of the Secretary's determination with respect to the entire industry.")

As the Seventh Circuit recently held, federal district courts may impose an injunction that extends relief to non-parties "to provide complete relief to plaintiffs, to protect similarly-situated nonparties, and to avoid the chaos and confusion that comes from a patchwork of injunctions." *Barr*, 961 F.3d at 917. Here, the best—and possibly only—remedy is a temporary restraining order barring Defendants from forgiving any loans until this Court can rule on the preliminary injunction. Every act of Defendants forgiving loans is an act of race discrimination, which cannot be undone, and once the money is spent, Congress and USDA will have no incentive to fix the program.

On the merits, Defendants' arguments only confirm Plaintiffs' basic assertion that Section 1005 of ARPA does not support a compelling government interest with a narrowly tailored remedy.[4] Defendants argue that they have a compelling government interest in using a race-based preference to respond to racially disparate impacts from COVID. In support of this, Defendants point to "statistical and anecdotal evidence" of racial disparities and a generalized "history of discrimination" within the agriculture industry. Dkt. 17:16–17.

These arguments do not meet the high burden established by the U.S. Supreme Court. As explained thoroughly in Plaintiffs' main brief, the Government must establish that it is responding to a "recent" and "specific episode" of "intentional discrimination" that the government "knowingly perpetuated." *See* Dkt. 14:16–17 (collecting cases). Defendants do not even come close to this high burden. Defendants' evidence comprises only old allegations of discrimination, *see* Dkt. 17-1:20–24 (identifying reports of discrimination from the 1990s and earlier). And any alleged recent "evidence" cited by Defendants (which Defendants call "lingering discrimination"), relies solely on statistical disparities among the races, and not on evidence of any recent intentional discrimination by USDA. Dkt. 17-1:25–27. It cannot be presumed that these "lingering" disparities are the product of past discrimination by USDA or that the extraordinarily broad racial preference (the

---

[4] In addition to their 23-page brief responding to the motion for a temporary restraining order, Defendants attempt to incorporate by reference another 68 pages of briefing and related materials filed in a different case. This is a clear attempt to flout the Court's limitation on briefing to 30 pages, without even asking permission for leave to exceed page limitations.

entire loan forgiven for all members of certain races) is necessary to overcome its impact.

But even if Defendants could point to a recent episode of intentional discrimination perpetuated by USDA that it hopes to remedy, Congress's remedy of loan forgiveness for all non-white farmers (with the exception of farmers and ranchers whose ancestors are from certain African or Asian countries) is not narrowly tailored. The government must show that its racial preferences are narrowly tailored to remedy *only* the impact of its *own* discriminatory conduct. *See, e.g., Builders Ass'n of Greater Chicago v. Cty. of Cook*, 256 F.3d 642, 645–46 (7th Cir. 2001). Because the government does not have a compelling interest in racial balancing or the elimination of disparities between racial groups, *see Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 726 (2007*)*, Congress's attempt to do so here cannot be narrowly tailored.

Notwithstanding the fact that COVID impacted all farmers and ranchers, Defendants take the extraordinary position that only minority farmers get COVID relief, which here involves the forgiveness of all indebtedness plus additional funds. Even if the government's past discrimination was sufficiently recent to warrant such an unprecedented race-based preference, the government must show more to support such an extraordinary program. Congress simply did not show any "serious, good faith consideration of workable race-neutral alternatives." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). For example, Defendants do not explain why they could not simply forgive loans of those farmers and ranchers, who, as they say, have been

"largely left out of recent agricultural funding and pandemic relief." Dkt. 17:17. And Defendants do not even attempt to justify their random inclusion and exclusion of farmers and ranchers based on their country of origin, or their categorical exclusion of female farmers. *See* Dkt. 14:21–23.

* * *

Given the serious problems identified with Section 1005 of ARPA and Defendants' current and ongoing implementation of this program, Plaintiffs respectfully request a short pause in loan forgiveness while the Court considers the pending motion for a preliminary injunction.

Dated: June 9, 2021

WISCONSIN INSTITUTE FOR LAW & LIBERTY

Attorneys for Plaintiffs

Rick Esenberg
*rick@will-law.org*

*/s/ Daniel P. Lennington*
Daniel P. Lennington
*dan@will-law.org*
Luke Berg
*luke@will-law.org*
Katherine D. Spitz
*kate@will-law.org*
330 E. Kilbourn, Suite 725
Milwaukee, WI 53202-3141
PHONE: 414-727-9455
FAX: 414-727-6385