UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ADAM P. FAUST, et al.,

          Plaintiffs,

          v.                                                           Case No. 21-C-548

THOMAS J. VILSACK, et al.,

          Defendants.

## ORDER STAYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs, twelve farmers who reside in nine different states, including Wisconsin, brought this action against the Secretary of Agriculture and the Administrator of the Farm Service Agency (FSA), seeking to enjoin officials of the United States Department of Agriculture (USDA) from implementing a loan-forgiveness program for socially disadvantaged farmers and ranchers under Section 1005 of the American Rescue Plan Act of 2021 (ARPA). Under Section 1005, Congress appropriated "such sums as may be necessary" to pay for the cost of loan modifications and payments in an amount up to 120% of outstanding indebtedness to "socially disadvantaged" farmers and ranchers. § 1005(a). Section 1005 incorporates 7 U.S.C. § 2279(a)'s definition of "socially disadvantaged farmer or rancher" as meaning a farmer or rancher who is a member of a "socially disadvantaged group," or "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." §§ 1005(b)(3); 2279(a)(5)–(6). "Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asian, or Pacific Islander" are the racial or ethnic groups that categorically qualify as socially disadvantaged under Section 1005. *See American Rescue Plan*

*Debt Payments*, U.S. DEPARTMENT OF AGRICULTURE, *available at* https://www.farmers.gov/americanrescueplan (last visited June 7, 2021). Plaintiffs are farmers who have qualifying farm loans but are ineligible for relief under Section 1005 solely because of their race. They claim that the race-based loan forgiveness program created by Section 1005 violates the principle of equal protection guaranteed by the Fifth Amendment to the United States Constitution. *See Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 224 (1995) (noting that "any person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny").

Plaintiffs filed motions for a temporary restraining order and preliminary injunction on June 3, 2021. In an effort to prevent the irreparable harm that would result from the race-based program going forward and to maintain the status quo, the Court granted Plaintiffs' motion for a temporary restraining order on June 10, 2021, after allowing the Government only two business days to respond. In a relatively brief ten-page order, the Court enjoined Defendants from forgiving any loans pursuant to Section 1005 until the Court ruled on Plaintiffs' motion for a preliminary injunction. The motion for a preliminary injunction became fully briefed on June 23, 2021. That same day, the United States District Court for the Middle District of Florida issued a 49-page decision granting the motion of a white Florida farmer for the same preliminary injunction based on the same equal protection guarantee. *Wynn v. Vilsack*, No. 3:21-cv-514-MMH-JRK, 2021 WL 2580678 (M.D. Fla. June 23, 2021).

Like this Court, but in a far more thorough analysis of the issue given the record before it, the district court in Florida concluded that the movant had established a substantial likelihood of success on the merits. More specifically, the *Wynn* court concluded from its review of the record that Section 1005 of ARPA likely could not be justified by the strict scrutiny required for race-

based governmental action. *Id.* at *3–12; *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989) (plurality opinion) ("Absent searching judicial inquiry into the justification for such race-based measures, there is simply no way of determining what classifications are 'benign' or 'remedial' and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics. Indeed, the purpose of strict scrutiny is to 'smoke out' illegitimate uses of race by assuring that the legislative body is pursuing a goal important enough to warrant use of a highly suspect tool."). The *Wynn* court further concluded, like this Court, that the movant would suffer irreparable harm if immediate relief was not granted and that the balance of equities and the public interest favored issuance of the preliminary relief requested. 2021 WL 2580678 at *12–16. Finally, the *Wynn* court concluded, also like this Court, that although nationwide injunctions should be rare, just such relief was necessary in this case to prevent the violation of the movants' rights. *Id.* at *17. After reading the court's decision and order in *Wynn* granting the same relief Plaintiffs are seeking in this case, the Court asked the parties to address the impact of that court's decision on Plaintiffs' now fully briefed motion for a preliminary injunction. Both sides submitted supplemental memoranda addressing the issue. Having now considered the arguments of counsel, the Court concludes that Plaintiffs' motion for a preliminary injunction should be stayed.

In reaching this decision, the Court is not suggesting that it is no longer convinced that Plaintiffs have established a likelihood of success on the merits. To the contrary, the thorough analysis of the court in *Wynn* confirms this Court's finding that Section 1005 of the ARPA is likely not a narrowly tailored means to achieve a compelling governmental interest. Instead, the Court is no longer satisfied, in light of the Florida district court's order in *Wynn*, that Plaintiffs can establish the second prerequisite for a preliminary injunction—that they would suffer irreparable harm if this Court did not grant a preliminary injunction. The *Wynn* court issued the same

nationwide injunction Plaintiffs ask this Court to issue based on a more complete record than was before this Court when it issued its temporary restraining order. Regardless of this Court's ruling on Plaintiffs' motion, they have the protection they seek. No purpose would be served by this Court issuing another order granting (or denying) the same nationwide relief.

In their supplemental memorandum filed in response to the Court's inquiry as to the status of their motion in light of *Wynn*, Plaintiffs noted "there is nothing extraordinary about district courts issuing overlapping injunctions," observing that "this practice was commonplace during the Trump Administration." Dkt. No. 44 at 2. By way of examples, Plaintiffs point to four district courts that issued redundant preliminary injunctions enjoining President Trump's memorandum excluding transexual individuals from the military, *Doe 1 v. Trump*, 275 F. Supp. 3d 167, 217 (D.D.C. Oct. 30, 2017) (granting national injunction against Trump's memorandum excluding transgender individuals from the military); *Stone v. Trump*, 280 F. Supp. 3d 747, 771 (D. Md. Nov. 21, 2017) (same); *Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305 (W.D. Wash. Dec. 11, 2017) (same); *Stockman v. Trump*, No. EDCV171799, 2017 WL 9732572 (C.D. Cal. Dec. 22, 2017) (same); four district courts that issued preliminary injunctions against the Protect Life Rule in April and May 2019, *Washington v. Azar*, No. 1:19-cv-03040-SAB, Dkt. No. 54 (E.D. Wash. Apr. 25, 2019) (nationwide injunction issued against the enforcement of the Trump Administration's Protect Life Rule); *Oregon v. Azar*, No. 6:10-cv-00317, Dkt. No. 142 (D. Or. Apr. 29, 2019) (redundant nationwide injunction issued against the enforcement of the Trump Administration's Protect Life Rule); *California v. Azar*, No. 3:19-cv-01184-EMC, Dkt. No. 103 (N.D. Cal. Apr. 26, 2019) (redundant injunction issued against the enforcement of the Trump Administration's Protect Life Rule limited to the named plaintiffs); *City & Cty. of Baltimore v. Azar*, No. 1:19-cv-01103-RDB, Dkt. No. 43 (D. Md. May 30, 2019) (redundant injunction issued

against the enforcement of the Trump Administration's Protect Life Rule limited to the named plaintiffs); and three district courts that enjoined the enforcement of a rule promulgated by the U.S. Department of Education, *Washington v. DeVos*, No. 2:20-cv-1119, Dkt. No. 54 (W.D. Wash. Aug. 21, 2020) (granting a nationwide preliminary injunction against the United States Department of Education and Secretary DeVos from implementing an interim final rule); *Michigan v. DeVos*, No. 3:20-cv-4478, Dkt. No. 82 (N.D. Cal. Aug. 26, 2020) (granting an overlapping preliminary injunction of the same rule applicable to the plaintiffs (multiple states and school districts)); *NAACP v. DeVos*, No. 20-cv-1996, Dkt. No. 77 (D.D.C. Sept. 4, 2020) (treating plaintiffs' preliminary injunction motion as an expedited summary judgment motion and vacating that same rule).

In none of the cases cited by Plaintiffs, however, did the courts that issued second and subsequent injunctions discuss the effect of the prior ruling granting injunctive relief on the movant's need to show irreparable harm if another injunction was not issued. On the other hand, as the Government points out, courts that have considered the effect of a prior ruling granting the same or similar relief have concluded that once another district court has entered the same relief, the plaintiffs were no longer able to demonstrate the irreparable harm that was needed to justify the extraordinary relief requested. Dkt. No. 45 at 2. *See, e.g.*, *Nat'l Urban League v. DeJoy*, No. 20-cv-2391, 2020 WL 6363959, at *11 (D. Md. Oct. 29, 2020) (denying preliminary injunction because plaintiffs had failed to demonstrate irreparable harm where there was no apparent distinction between the relief they sought and injunctions already entered); *cf. Washington v. Trump*, No. C17–0141, 2017 WL 4857088, at *6 (W.D. Wash. Oct. 27, 2017) (because another district court had "already provide[d] Plaintiff States with virtually all the relief they seek," plaintiffs will not incur "any significant harm" by the court's staying consideration of their TRO

motion); *Int'l Refugee Assistance Project v. Trump*, No. 17–cv–0361, 2017 WL 1315538, at *2 (D. Md. Apr. 10, 2017) ("[I]n light of the current nationwide injunction of Section 6 by the United States District Court of the District of Hawaii, a stay would not impose any hardship on Plaintiffs or result in irreparable harm."); *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) ("[T]he Western District of Washington's nationwide injunction already provides the State with the comprehensive relief it seeks in this lawsuit. As such, the State will not suffer irreparable damage . . . if the Court were to grant Defendants' motion to stay."); *Pars Equality Ctr. v. Trump*, No. 17-cv-255, Dkt. No. 84 at 2 (D.D.C. May 11, 2017) (staying resolution of preliminary-injunction motions and noting that "[t]he existence of two other nationwide injunctions temporarily casts uncertainty on the issue of whether the harms Plaintiffs allege are actually imminent or certain"). The Court finds the reasoning of these courts persuasive.

Plaintiffs argue that injunctive relief is necessary in this case as well, given the possibility that the injunction entered in *Wynn* could be vacated or modified, or that case, involving a single plaintiff, could become moot due to factors over which Plaintiffs here have no control. Dkt. No. 44 at 3. The mere possibility that the injunction entered in *Wynn* could be overturned is not enough to show that Plaintiffs would suffer irreparable harm since, as Plaintiffs concede, they could immediately renew their request for relief in this Court. As the Government contends, the argument is itself a concession that any harm Plaintiffs may suffer is at this point speculative. Dkt. No. 45 at 3.

Plaintiffs also argue that "deferring or denying an injunction in this case would effectively make the Eleventh Circuit the only relevant Court of Appeals circuit on this issue, even though Plaintiffs filed their case in the Seventh Circuit." Dkt. No. 44 at 4. But absent a showing that Plaintiffs have no adequate remedy at law, the Seventh Circuit is not likely to consider the merits

6

of any order this court enters on a motion for a preliminary injunction. Staying a decision on Plaintiffs' motion for a preliminary injunction therefore does not deny them the right to have their case heard.

To be sure, Plaintiffs are entitled to a decision on the merits of the case they have brought. "Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943). But absent a showing of irreparable harm, they are not entitled to a preliminary injunction. At the same time, because the Court also acknowledges that Plaintiffs' interests are not fully protected by the court's decision in *Wynn v. Vilsack*, it will not simply deny their motion. Instead, Plaintiffs' motion for a preliminary injunction (Dkt. No. 13) will be stayed so that in the event the injunction issued by the court in *Wynn* is vacated or materially altered, the stay can be lifted and Plaintiffs' motion can be given prompt consideration by the Court. In the meantime, the temporary restraining order previously entered by the Court (Dkt. No. 21) is dissolved since it is no longer needed to preserve the status quo. The parties are directed to confer with one another regarding further scheduling and submit a proposed expedited schedule to resolve the merits of this action on or before July 14, 2021. The Clerk is directed to set the matter for a telephone conference to discuss further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 6th day of July, 2021.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge