IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| ADAM P. FAUST, *et al.*, | ) |
| *Plaintiffs*, | ) |
| v. | ) Civil Action No. 21-cv-548-WCG |
| THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture, *et al.*, | ) |
| *Defendants*. | ) |

**DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING
RESOLUTION OF RELATED CLASS ACTION**

For the reasons stated in the attachment memorandum, Defendants Thomas J. Vilsack, in his official capacity as Secretary of Agriculture, and Zach Ducheneaux, in his official capacity as Administrator of the Farm Service Agency (collectively, USDA or Defendants), hereby move to stay the proceedings in this case until final resolution of the proceedings in related litigation that has been certified as a class action under Federal Rule of Civil Procedure Rule 23(b)(2). Counsel for Defendants have conferred with counsel for Plaintiffs, who indicate that Plaintiffs oppose this request.

1

Dated: July 12, 2021                                Respectfully submitted,

                                                    BRIAN M. BOYNTON
                                                    Acting Assistant Attorney General

                                                    LESLEY FARBY
                                                    Assistant Branch Director
                                                    Civil Division, Federal Programs Branch

                                                    */s/ Emily Newton*
                                                    EMILY SUE NEWTON (VA Bar No. 80745)
                                                    Senior Trial Counsel
                                                    KYLA M. SNOW (Ohio Bar No. 96662)
                                                    Trial Attorney
                                                    United States Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    1100 L Street, NW
                                                    Washington, D.C. 20005
                                                    Tel: (202) 305-8356 / Fax: (202) 616-8460
                                                    emily.s.newton@usdoj.gov

                                                    *Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| ADAM P. FAUST, *et al.*, | ) |
| *Plaintiffs*, | ) |
| v. | ) Civil Action No. 21-cv-548-WCG |
| THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture, *et al.*, | ) |
| *Defendants*. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY
PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION**

Plaintiffs filed this action to challenge the U.S. Department of Agriculture's (USDA) implementation of Section 1005 of the American Rescue Plan Act of 2021 (ARPA) on equal protection grounds. As this Court is well aware, Plaintiffs' lawsuit is not the only challenge to Section 1005. There are currently twelve such lawsuits pending before courts around the country, and Defendants have been preliminarily enjoined on a nationwide basis from disbursing Section 1005 funds pending resolution of related litigation. In light of the recent grant of class certification in the first-filed challenge to Section 1005, Defendants respectfully request a stay of this case.[1]

Specifically, the Northern District of Texas certified two classes of farmers and ranchers bringing an equal protection challenge to Section 1005 like that Plaintiffs bring here. *See* Order on Class Cert. & PI, *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.) (attached as Ex. A). At the same

---

[1] Concurrent with this stay motion, Defendants are also filing a motion for an administrative stay, to stay the upcoming deadline of July 14, 2021, for the parties to submit a proposed schedule for resolving this case on the merits, as well as to vacate the scheduling conference currently scheduled for July 20, 2021, until the Court decides this stay motion.

time, that court issued an injunction that prevents the Government from disbursing Section 1005 funds while the case is adjudicated on the merits. *Id.* Plaintiffs are members of the classes certified under Rule 23(b)(2), and Defendants will be bound by any relief granted to the classes with respect to Plaintiffs should the classes' Section 1005 equal protection claim prevail.

Thus, continued adjudication of Plaintiffs' claim in this Court, separate from the class to which they belong, would be unnecessarily duplicative and risk inconsistent results. A stay, on the other hand, would not prejudice Plaintiffs, where proceedings on the merits of the claims in both cases are just commencing, and Plaintiffs will be bound by and benefit from any final judgment applicable to the classes. A stay would also preserve judicial resources and prevent hardship to Defendants, who would otherwise be required to continue defending against duplicative claims in separate courts and on divergent schedules. Finally, the requested stay would be consistent with those granted by other courts in similar circumstances. For these reasons, Defendants respectfully request that the Court stay proceedings in this case until final resolution of the proceedings in the class challenge to Section 1005 in *Miller*.

## BACKGROUND

This is one of twelve cases, brought in courts around the country, challenging USDA's implementation of ARPA Section 1005, which authorizes debt relief to socially disadvantaged farmers or ranchers, on equal protection grounds. *See Miller*, 4:21-cv-595; *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.); *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v.*

*Vilsack*, 21-cv-1572 (D. Minn.).[2] *Miller*, the first-filed case, commenced on April 26, 2021. Compl., *Miller*, ECF No. 1.

On April 29, 2021, Plaintiffs filed this action, Compl., ECF No. 1, and roughly one month later, they moved for a TRO and a preliminary injunction, ECF Nos. 12, 13. After the Court granted the TRO, three other courts entered preliminary injunctions against disbursement of programmatic funds. *See* Order on Class Cert. & PI, *Miller*; PI Order, *Holman*, ECF No. 41.[3] This Court recently dissolved its TRO and stayed Plaintiffs' motion for a preliminary injunction in light of the nationwide injunction entered in *Wynn*. Order, ECF No. 21.

Meanwhile, on June 2, the *Miller* plaintiffs—five in total—moved to certify two classes of farmers and ranchers, Br. in Supp. of Mot. for Class Cert., *id.*, ECF No. 13, and for a preliminary injunction, Br. in Supp. of Mot. for PI, *id.*, ECF No. 18.[4] And on June 30, 2021, the *Miller* court granted both motions. Order on Class Cert. & PI, *id.* Adopting the plaintiffs' proposed class definitions in full, the court certified the following two classes under Rule 23(b)(2):

1. All farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act.

2. All farmers and ranchers in the United States who are currently excluded from the definition of "socially disadvantaged farmer or rancher," as defined in 7 U.S.C. § 2279(a)(5)–(6)[5] and as interpreted by the Department of Agriculture.

---

[2] Defendants have not yet been served in all of these cases, and the Government does not waive any objections regarding service.
[3] The court in *Holman* entered a preliminary injunction on July 8, 2021.
[4] Although the plaintiffs there assert equal protection, Title VI, and statutory construction claims, their preliminary injunction and class certification motions relied solely on their equal protection challenge to Section 1005. *See* Br. in Supp. of Mot. for Class Cert. 3, *id.*
[5] Section 1005 incorporates the definition of "socially disadvantaged farmer or rancher" set out in 7 U.S.C. § 2279(a).

*Id.* at 5-6. Although two classes were certified, the plaintiffs and the Court emphasized that the classes were specific to the plaintiffs' challenge to Section 1005. *Id.* at 13; Class Cert. Reply 1, ECF No. 41 ("The plaintiffs—at this point in the litigation—are seeking classwide relief *only* against the continued enforcement of the racial exclusions in section 1005 of the American Rescue Plan Act."); *id.* at 4 ("These classes are being proposed for the purpose of obtaining preliminary classwide relief against the racial exclusions in section 1005.").

Additionally, in granting the plaintiffs' preliminary-injunction motion, the court enjoined Defendants

> from discriminating on account of race or ethnicity in administering section 1005 of [ARPA] for any applicant who is a member of the Certified Classes. This prohibition encompasses: (a) considering or using an applicant Class Member's race or ethnicity as a criterion in determining whether that applicant will obtain loan assistance, forgiveness, or payments; and (b) considering or using any criterion that is intended to serve as a proxy for race or ethnicity in determining whether an applicant Class member will obtain loan assistance, forgiveness, or payments.

Order on Class Cert. & PI 22-23, *id.* Like this Court's nationwide injunction, the *Miller* court's injunction precludes disbursement of Section 1005 funds while the case is adjudicated on the merits.[6] The *Miller* court ordered the parties to submit a proposed schedule for resolving the case on the merits by July 16.[7]

## STANDARD OF REVIEW

"The District Court has broad discretion to stay proceedings as an incident to its power to

---

[6] On July 2, Defendants notified the court that it understood this injunction to be consistent with those entered in *Faust* (previously) and *Wynn* (extant), in that it prohibits Defendants from issuing payments under Section 1005 but does not prohibit Defendants from "taking preparatory steps, including sending offer letters to eligible borrowers, to enable prompt payments if later permitted." Notice 2, *id.*, ECF No. 61. Per order of the court, the plaintiffs responded to Defendants' Notice on July 5. Resp., *id.*, ECF No. 63. Defendants filed a reply July 6. Reply, *id.*, ECF No. 65.

[7] On June 29, Defendants filed a partial answer and partial motion to dismiss the plaintiffs' non-Section 1005 claims. *See* ECF Nos. 49, 51.

6

control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). That power applies "especially in cases of extraordinary public moment," when "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 707 (modifications omitted).

When determining whether to grant a stay, courts balance the following factors: (1) whether litigation is at an early stage; (2) whether a stay would prejudice or disadvantage to the non-moving party, (3) whether a stay might simplify issues in question or streamline trial; and (4) whether a stay will reduce the burdens of litigation on the parties and the court. *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010). A stay must not be "immoderate," meaning it must not be indefinite in duration. *Id*.

The interests of judicial economy carry significant weight, particularly when considering whether to stay one of multiple cases involving the same parties and issues. "A stay is appropriate particularly if the resolution of litigation in another court between the same and/or related parties involves controlling issues in the case before the Court." *Le v. Kohl's Corp.*, No. 15-CV-1171, 2016 WL 9225265, at *1 (E.D. Wis. Mar. 1, 2016) (citation omitted). Where possible, courts should exercise their "broad managerial discretion to prevent unnecessary duplication of effort in related cases." *SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1068 (W.D. Wis. 2008) (quoting *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 745 (7th Cir. 1994)). "Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time." *B&B Hardware, Inc. v. Hargus Indus., Inc.*, 575 U.S. 138, 140 (2015). Thus, "[t]ypically, when duplicative actions are filed in federal court, the general rule favors the forum of the first-filed suit." *Le*, 2016 WL 9225265, at *1 (internal quotation marks and citation omitted).

7

# ARGUMENT

The Court should stay the proceedings in this case until final resolution of the class challenge to Section 1005 in *Miller*.[8] All relevant factors support this proposed stay. Most significantly, a stay is in the interest of judicial economy: Because Plaintiffs are members of the classes challenging Section 1005 and will directly benefit from any relief granted in the classes' favor, staying this case would avoid unnecessarily duplicative litigation and potentially inconsistent results. Relatedly, a stay would not prejudice Plaintiffs, who are already protected by multiple preliminary injunctions and who may receive all the relief they are entitled to upon final judgment of the *Miller* class action. On the other hand, continuing to adjudicate Plaintiffs' claim in this Court and in *Miller* simultaneously would impose hardship on Defendants, who would be required to defend against identical claims in multiple courts at the same time—including in ten other courts around the country. Finally, courts regularly stay cases pending resolution of related class actions. This Court should do likewise.

## I. A stay is in the interest of judicial economy.

First, a stay of these proceedings would promote judicial economy because resolution of the class challenge to Section 1005 in *Miller* is likely to have a substantial or controlling effect on Plaintiffs' claim in this case. Plaintiffs undisputedly fall within the definition of the classes challenging Section 1005 in *Miller*: They are farmers who allege that they are being subjected to racial discrimination due to USDA's provision of Section 1005 debt relief to socially disadvantaged farmers, because the definition of "socially disadvantaged farmer or rancher" does not automatically include farmers like them who self-identify as white. Am. Compl. ¶¶ 1-7. The

---

[8] Defendants have not appealed the order granting a preliminary injunction and certifying the classes in *Miller* but reserve their right to do so. If the classes are decertified for any reason, the parties can brief the Court on whether the stay should be lifted.

classes in *Miller* were certified under Rule 23(b)(2), which means that Plaintiffs cannot opt out. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-63 (2011). Thus, any relief ordered in *Miller* will apply in the same way to Plaintiffs as it does to all other class members. *Id.* (noting that the relief sought in a Rule 23(b)(2) class "perforce affect[s] the entire class at once"). Indeed, that relief will be *binding* on Plaintiffs and would preclude them, like all other class members, from obtaining an alternative judgment in another proceeding. *Cooper v. Fed. Rsrv. Bank of Richmond,* 467 U.S. 867, 874 (1984).

Accordingly, permitting Plaintiffs to continue litigating their claim in this Court, separate from the rest of the class to which they belong, would create a risk of inconsistent results that could undermine the preclusive effect of a class-wide judgment and confuse Defendants' obligations to different class members. *See Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993), *aff'd,* 193 F.3d 1185 (11th Cir. 1999) (noting that one consideration for granting a stay is the possibility of "avoid conflicting orders"); *Aetna State Bank v. Altheimer*, 430 F.2d 750, 755 (7th Cir. 1970) (noting the propriety of staying a case pending outcome of other litigation involving the same parties and controlling issues). For instance, if the plaintiff class succeeds in its equal protection challenge to Section 1005 in *Miller* but Plaintiffs lose their claim here (or vice versa), Defendants would be subject to conflicting judgments concerning the constitutionality of Section 1005 and, importantly, their obligations toward these Plaintiffs. Staying this case pending resolution of the class challenge to Section 1005 in *Miller* would promote judicial efficiency by avoiding this risk of such contradictory outcomes.

That *Miller* was certified as a class action after Plaintiffs filed this case does not undermine the preclusive effect of any class-wide judgment or justify Plaintiffs' continued litigation of their

claim separately in this Court.[9] *Miller* was the first-filed case, which underscores the conclusion that a stay here is appropriate and in the interest of judicial economy. "Under [the] 'first to file' rule, district courts normally stay or transfer a federal suit for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 832–33 (N.D. Ill. 2004) (quoting *Serlin v. Arther Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)). "[T]he plaintiff bears the burden of showing any special circumstances which justify a divergence from the 'first-to-file' rule." *Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 34 F. Supp. 2d 1092, 1095 (N.D. Ill. 1999).

There is an especially good reason not to diverge from that rule here: because Plaintiffs are class members, *the very same claim brought by these Plaintiffs* is being simultaneously litigated in two courts. And, as Plaintiffs and Defendants will both be bound by any class-wide judgment on Section 1005, litigating the cases separately does not benefit Plaintiffs or serve judicial economy, but only burdens judicial resources at the risk of creating conflicting outcomes. Moreover, both cases are still in their early stages, with a proposed schedule due in *Miller* by July 16. Thus, staying this case at this early stage of the proceedings would not cause unnecessary disruption to litigation of Plaintiffs' claim, but would instead further promote its efficient resolution before any case deadlines have passed in *Miller*. The Court should therefore stay this case pending resolution of the first-filed equal protection class challenge to Section 1005 in *Miller*.

---

[9] As explained below, courts often stay proceedings while a motion for class certification is pending. *See infra* at 11 & n.10.

**II. A stay would not prejudice Plaintiffs and would avoid hardship to the Government.**

Additionally, and for the same reasons, staying this case pending resolution of the class challenge to Section 1005 in *Miller* would not prejudice Plaintiffs. Again, the classes certified in *Miller* challenge the same agency action and seek the same relief as Plaintiffs seek here. *Compare* Pls.' Br. in Supp. of Prelim. Inj. ECF No. 18, *Miller* (challenging the implementation of Section 1005 based on USDA's interpretation of "socially disadvantaged farmer or rancher" with reference to race), *with* Pls.' Br. in Supp. of Mot. for Prelim. Inj., ECF No. 14 (same). Indeed, the *Miller* court has already ordered the relief that Plaintiffs seek in this case: a preliminary injunction prohibiting the Government from disbursing payments under Section 1005. *See* Order on Class Cert. & PI, *Miller*; *see also* Pls.' Supp. Memo, ECF No. 44. And because Defendants will be bound by a final judgment on the class claim with respect to these Plaintiffs, they are not harmed by a stay of their duplicative case.

Relatedly, a stay of the proceedings in this case would avoid hardship to the Government. Specifically, requiring the Defendants to defend Plaintiffs' claim in this Court and the class action in *Miller* at the same time (along with all other pending cases), with the potential for different case schedules, would drain the courts' and the Government's resources without any apparent benefit to Plaintiffs. Indeed, the burden on Defendants is already significant, given that there are currently eleven other substantively similar lawsuits pending around the country, with additional requests for preliminary injunctive relief pending in several of those cases.[10] Moreover, particularly given the importance of the issues at stake, the Government should not be compelled to defend multiple cases raising substantially similar claims on different schedules and potentially subject to different

---

[10] *See* Pl.'s Mot. for PI, *McKinney*, 2:21-cv-212, ECF No. 9 (filed June 17, 2021); Pls.' Mot for PI, ECF No. 11, *Dunlap*, 2:21-cv-942 (filed June 29, 2021).

discovery obligations—all while simultaneously defending against duplicative requests for nationwide preliminary injunctions. *Cf. Clinton*, 520 U.S. at 707 (explaining that "especially in cases of extraordinary public moment, a plaintiff may be required to submit to delay" (modifications omitted)).

### III. Courts regularly stay cases pending resolution of related class actions.

Finally, a stay here would be consistent with other courts' recognition that a stay (or even dismissal) is generally warranted upon certification of a class of which the plaintiff is a member.[11] *See, e.g., Jiaming Hu v. U.S. Dep't of Homeland Sec.*, 4:17-cv-02363, 2018 WL 1251911, at *4 (E.D. Mo. Mar. 12, 2018) ("Since class members generally cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified." (internal quotation marks omitted) (citing circuit cases dismissing actions where the plaintiff was a member of certified class in another case)); *see also Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (affirming dismissal without prejudice "based on the rule against duplicative litigation" where plaintiff's allegations "duplicated claims that had been included in separate class actions" against the defendant, and plaintiffs "were members of those classes"); *Aleman ex rel. Ryder Sys., Inc. v. Sancez*, 21-cv-20539, 2021 WL 917969, at *2 (S.D. Fla. Mar. 10, 2021) (noting that "the Court entered an order staying proceedings" pending resolution of a related class action, "recognizing that the cases are related, and that the resolution of the issues raised in the Class Action will necessarily impact the proceedings in" the case); *Richard K. v. United Behavioral*

---

[11] Indeed, federal courts will regularly stay cases when a class certification motion is only *pending*, rather than already granted, in an earlier-filed related case. *See, e.g., Sanchez-Cobarrubias v. Bland*, CV609-005, 2011 WL 841082, at *1 (S.D. Ga. Mar. 7, 2011) (reciting case history); *Bargas v. Rite Aid Corp.*, CV1303865MWFJEMX, 2014 WL 12538151, at *3 (C.D. Cal. Oct. 21, 2014).

*Health*, 18-cv-6318, 2019 WL 3083019, at *7 (S.D.N.Y. June 28, 2019), report and recommendation adopted, 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (explaining that stay and dismissal without prejudice "are routinely found appropriate where, as here, the claims made in an individual lawsuit overlap with the claims being pursued by a certified class of which the individual plaintiff is a member").

In such cases, courts have ordered a stay of the same scope Defendants seek here, that is, a stay of all proceedings until final resolution of a related class action. *See, e.g., Gonzales v. Berryhill*, 18-cv-603, ECF No. 28 (D.N.M. Mar. 5, 2019) (staying proceedings until the district court in a related case "issues a decision on the forthcoming motion for class certification and, if a class is certified in [the related case], until the conclusion of all proceedings in [the related case], including any appeals.").

The First Circuit's decision in *Taunton Gardens Co. v. Hills* illustrates the propriety of a stay in circumstances strikingly similar to this case. 557 F.2d 877 (1st Cir. 1977). There, the plaintiffs challenged "the administration of a major federal program and the disbursement of a significant amount of federal money," and the case thus "present[ed] issues of 'public moment.'" *Id.* at 879. And there, much like here, the implementation of that federal program had spurred litigation "in more than ten district courts" around the country, and the Government was subject to multiple injunctions. *Id.* Moreover, like this case, a related action was certified as a class action. *See Taunton Gardens Co. v. Hills*, 421 F. Supp. 524, 526 (D. Mass. 1976). Although the plaintiffs in *Taunton Gardens* were not members of that class, the court noted that they challenged the same program and sought identical relief and, thus, that the class action determined the merits of the case. *Id.* Accordingly, the district court found it was in "the interest of justice" to stay all proceedings—including litigation of the pending motion for preliminary injunction—"pending

entry of a final judgment in the class action case." *Id*. The First Circuit upheld the stay, also emphasizing that it was in the "public interest, the court's interest in efficient procedures, and the interest of justice" to stay the case and afford the Government "a reasonable opportunity to resolve its obligations in the national class action." 557 F.2d at 879. It also pointed out that the stay's duration, lasting until an appeal of the class action judgment was resolved, was reasonable. *Id*.

All of the factors considered by *Taunton Gardens* support a stay here: Plaintiffs challenge a significant federal program presenting issues of "public moment," and undersigned counsel are defending against claims in twelve courts around the country. Additionally, the recently certified classes in *Miller* seek the same relief Plaintiffs seek in this case—and indeed, since Plaintiffs are members of those classes, resolution of the challenge to Section 1005 in *Miller*, and any relief granted by that court will operate to protect Plaintiffs together with all other class members. Finally, the scope of the stay requested here—until resolution of the class action—is the same as that approved in *Taunton Gardens* and other cases. There, as here, the "public interest, the court's interest in efficient procedures, and the interest of justice" support a stay of all procedures pending resolution of the class challenge to Section 1005 in *Miller*.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court stay all proceedings in this case pending resolution of the class challenge to Section 1005 in *Miller*.

Dated: July 12, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Emily Newton*

14

EMILY SUE NEWTON (VA Bar No. 80745)
Senior Trial Counsel
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-8356 / Fax: (202) 616-8460
emily.s.newton@usdoj.gov

*Counsel for Defendants*