IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

ADAM P. FAUST, et al.,

    Plaintiffs,

v.

THOMAS J. VILSACK, in his official capacity
as Secretary of Agriculture, and

ZACH DUCHENEAUX, in his official capacity
as Administrator of the Farm Service Agency,

    Defendants.

Case No. 1:21-cv-00548-WCG

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY

    Defendants have asked this Court to stay this proceeding and submit Plaintiffs to a class action procedure controlled not by the attorneys they retained, but by different counsel in a distant forum. Pointing to *Miller v. Vilsack*, an action filed in the Northern District of Texas, and emphasizing the burden on the government's resources rather than the prejudice to the Plaintiffs that would result from a stay, Defendants ask this Court to relinquish its role in deciding the important constitutional issues Plaintiffs have raised. Plaintiffs respectfully request that this Court deny the motion to stay.

**I.    Standard of review**

    The proponent of a stay bears the burden of establishing its need. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). A request for a stay requires a court to balance

1

interests favoring a stay against interests frustrated by the action "in light of the court's strict duty to exercise jurisdiction in a timely manner." *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citations omitted).

Courts generally consider whether the stay will simplify the issues in question, reduce the burden of litigation on the parties and the court, and whether the stay will "unduly prejudice or tactically disadvantage the nonmoving party." *Hall v. Meridian Senior Living, LLC*, Case No. 21-cv-55-SSMY, 2021 WL 2661521 (S.D. Ill. June 29, 2021) (quoting citation omitted). District courts have broad discretion when deciding whether to stay litigation. *Stone v. INS*, 514 U.S. 386, 411 (1995). However, any stay must not be "immoderate" and must be within "reasonable limits." *Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936). A court abuses its discretion if it imposes a stay of indefinite duration "in the absence of a pressing need" for the same. *Abandoned Prop., LLC v. Kellams*, Cause No. 2:11-cv-384-PPS-PRC, 2012 WL 13041523 at *1 (N.D. Ind. Jan. 26, 2012) (quoting *Landis*, 299 U.S. at 255).

## II. The "first filed" rule is not absolute in this circuit and should not operate to stay this litigation.

Defendants argue that all cases filed after the *Miller v. Vilsack* lawsuit (filed in the Northern District of Texas on April 26, 2021), including this one, should be stayed under the "first to file" rule. As a preliminary matter, it is not clear at all that the "first to file" rule even applies. That rule is ordinarily applied to situations where two litigants sue each other in different forums. *See, e.g., Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 982 (7th Cir. 2010) (discussing the rule in the context of "mirror-image" lawsuits filed by the same "two parties" against

2

each other). Both the Ninth and Sixth Circuits have explained that the rule applies only when the two cases involve "the same," or "nearly identical" parties. *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015); *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016); *see also Samsung Elecs. Am., Inc. v. Grecia, No.* CV 21-562, 2021 WL 978957, at *6 (E.D. Pa. Mar. 15, 2021) ("We are aware courts readily apply the first-to-file rule to cases involving the same parties and the same transaction but not so readily in cases involving different parties or different transactions.").

In any event, even if the "first-to-file" rule applies in cases involving *different* parties (like this), the Seventh Circuit has explained that, even when the parties are the same, "there is no precise rule for resolving the problem created by mirror-image lawsuits in two different federal courts." *Research Automation, Inc.*, 626 F.3d at 982 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (internal quotation marks omitted).

Defendants argue that the *Miller v. Vilsack* lawsuit, filed in the Northern District of Texas on April 26, 2021, constitutes the first-filed suit and that all subsequent cases, including this one, should be stayed as a result. But "there is no precise rule for resolving the problem created by mirror-image lawsuits in two different federal courts." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 982 (7th Cir. 2010) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (internal quotation marks omitted). In the Seventh Circuit, "[t]here is no 'first filed doctrine' requiring dismissal of all suits after

3

the first." *Central States, Southeast & Southwest Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000). "[U]nder the right circumstances, a court in which the second action is filed may decide to consider the claims, even if they overlap with those included in an earlier-filed action." *Rudich v. Metro Goldwyn Mayer Studio, Inc.*, No. 08-cv-389-bbc, 2008 WL 4691837 at *3 (W.D. Wis. Oct. 22, 2008) (citing *Blair v. Equifax Check Servs.*, 181 F.3d 832, 838 (7th Cir.1999)).

The district court is "accorded a great deal of latitude and discretion in determining whether one action is duplicative of another," *Serlin v Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (internal citation and quotation marks omitted). "Second-filed actions may proceed where favored by the interests of justice." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp.2d 829, 833 (N.D. Ill. 2004) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987)). "[I]f there is even a fair possibility that the stay will work damage to someone else, the party seeking the stay must make out a clear case of hardship or inequity in being required to go forward." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (internal quotation marks and citation omitted).

In *Central States*, a pension fund and an employer both sought judicial review of an arbitrator's decision in two different district courts in Missouri and Illinois. The Illinois judge dismissed the action before it based solely on the fact that the Missouri action had been filed hours before. *Id.* at 443. The Seventh Circuit observed that "a stay should not be issued automatically" under such circumstances because there is no "mechanical rule" that governs. *Id.* at 444.

4

Defendants have argued that the parties and issues in this case and *Miller* overlap and that multiple lawsuits could result in inconsistent outcomes, thus further supporting its request for a stay. However, the Seventh Circuit specifically cautioned against "jump[ing] the gun just to avoid all possibility of inconsistent outcomes" in *Blair v Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999). In *Blair*, recipients of a collection letter from a check verification service brought a class action under the Fair Debt Collection Practices Act, which the district court certified. Equifax moved for reconsideration, then appealed, based on a settlement agreement Equifax had reached with class counsel in another case, which had been negotiated but not yet approved by the court. Equifax argued that the settlement agreement precluded Blair from proceeding. The Seventh Circuit rejected this bright line rule, and noted that "the judge hearing the second-filed case may conclude that it is a superior vehicle and may press forward. When the cases proceed in parallel, the first to reach judgment controls the other, through claim preclusion." *Id.* The Court recognized any number of possibilities that might favor allowing the second suit to proceed rather than dismissing or decertifying it. As the Court pointed out:

> Perhaps Equifax found a plaintiff (or lawyer) willing to sell out the class . . . and then tried to use *Crawford* [the first filed case] as a way to thwart parallel actions where the class had more vigorous champions. Then again, perhaps the deal in *Crawford* was the best the class could obtain. We do not prejudge that issue. Enough questions have been raised, however, to show that Judge Plunkett was entitled to keep the *Blair* class in place until final decision in *Crawford*.

*Id.* at 839. *Blair* demonstrates that the first-filed inquiry is not as black-and-white as Defendants would have it. That case had proceeded much further than this one; the

5

certified class had negotiated an agreement that would terminate the litigation completely if approved, whereas here the schedules have yet to be set and the merits decided.

If the *Blair* court saw fit to affirm the district court's decision not to decertify the second class, even with the potential for the end of the litigation in sight, there is certainly no justification to reflexively and mechanically apply a "first filed" rule here. There are at least two reasons to reject Defendants' first-filed argument at this juncture: 1) because the lone plaintiff in *Miller* at the time of filing lacked standing, this case is the first filed suit; and 2) even if this Court considers *Miller* the first-filed suit, this litigation provides a superior vehicle for determining the merits.

  A. While Miller was technically filed first, its initial plaintiff lacked standing and so this lawsuit should be treated as the first filed.

Defendants are correct that the *Miller* case was technically filed first, on April 26, 2021. *Miller*, Case No. 4:21-cv-00595-O (N.D. Tex.) ("*Miller*"), Dkt. 1. However, the lone plaintiff in *Miller* at the time of its filing was Sid Miller, the Commissioner of the Texas Department of Agriculture. *Id.* The complaint did not allege that Miller himself had any outstanding FSA loans, such that he could argue he was on unequal footing with members of those racial groups that the Government had designated as "socially disadvantaged" and eligible for loan forgiveness payments due to their race. Consequently, Miller had suffered no injury in fact that could be redressed by the Texas district court. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (describing injury in fact as "first and foremost" of the elements of standing and a constitutional requirement). The plaintiff must have suffered an invasion of a legally protected

6

interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Miller himself did not satisfy these requirements, and although Miller's counsel has since amended the complaint to add farmers who would otherwise qualify for relief under Section 1005 of ARPA but for their race, (*Miller*, Dkt. 11) this did not occur until well into June of 2021.

Defendants point out that counsel across the country have filed lawsuits challenging Section 1005, but of significance is that the first such lawsuit to be filed that *actually included farmers who had standing to challenge the law* was this lawsuit. Plaintiffs' counsel filed this case just three days after *Miller*, initially naming five farmers residing in four different states, a group that expanded to twelve farmers in nine states by May 19—several weeks before *Miller* added a single farmer plaintiff. (Dkt. 1, ¶¶ 8-12; Dkt. 7, ¶¶ 8-17.) Every lawsuit challenging Section 1005, save *Miller*, was filed subsequent to this one.[1] If this Court decides to apply the first-filed rule, it should consider this case as the first one filed because there is no genuine dispute that this Court has validly exercised its jurisdiction over the parties since the case's inception.

---

[1] *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.) (May 18, 2021); *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.) (May 24, 2021); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.) (June 2, 2021); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.) (June 7, 2021); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.) (June 10, 2021); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.) (June 15, 2021); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.) (June 24, 2021); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.) (June 29, 2021); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.) (July 6, 2021); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.) (July 7, 2021).

7

One of the circumstances in which courts often disregard the first-filed preference in this circuit occurs where there is a proverbial race to the courthouse. "The first-to-file rule should not be applied simply to reward the fastest filer or encourage unseemly races to the courthouse." *Rudich*, 2008 WL 4691837 at \*4 (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987)). A party that files first in order to prevent being sued itself, to secure a particular forum, or otherwise be first is not to be rewarded. While Defendants of course were not the ones who filed the *Miller* lawsuit, they are nevertheless seeking to take advantage of a first-filed preference in favor of litigation that began with a fundamental mistake (namely, the named plaintiff not having standing to pursue the lawsuit). As noted in *Blair*, the first-filed preference should not be employed to prevent plaintiffs who might be disserved by strategic choices in the first lawsuit from obtaining relief.

- B. Even if this Court considers *Miller* the first-filed suit, this case provides a superior vehicle for adjudication.

This litigation is a superior vehicle to the class action filed in *Miller* for the adjudication of the constitutional questions raised by Plaintiffs in their complaint, and should be allowed to proceed even if this Court determines that *Miller* is the "first filed" suit. While the class representatives in *Miller* purport to represent all farmers who will experience race discrimination due to Section 1005, the named representatives are all residents of the State of Texas. *Miller*, Dkt. 60 at 1. While Plaintiffs in this case have yet to see any evidence proffered by Defendants establishing a compelling interest in the race-based benefits provided by the program

in *any* area of the country, it is possible that Defendants could adduce evidence in discovery that the federal government intentionally discriminated against farmers of color in certain areas of the country, but not others. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498-500 (1989) (requiring particularized data to justify race-based relief). Should that prove to be the case in Texas (or parts of that state), but not in other states where the Plaintiffs in this case reside, the named Plaintiffs and their counsel in *Miller* will necessarily be compelled to devote resources to arguing factual issues distinct from those of Plaintiffs in this case (and in the other cases filed across the country).[2] Hence, the interests of Plaintiffs in this case and the class in *Miller* do not necessarily overlap—and because the class has been certified under Fed. R. Civ. P. 23(b)(2), Plaintiffs in this case would be bound by the result under the doctrine of *res judicata* if the case reaches final judgment—despite not being similarly situated.

Additionally, given the certification of the class in *Miller*, it is likely that the class action will take far longer to resolve than the instant case. Courts within this circuit have identified a lengthier timetable for resolution as a factor that may be considered when evaluating a motion to stay or transfer a case. *See Meyer v. Midland Credit Mgmt., Inc.* No. 3:20-cv-137-NJR, 2020 WL 5578933 at *2 (S.D. Ill. Aug. 26, 2020) (denying motions to transfer or stay in part because "progress in the cases

---

[2] That there could be selected regions of the country in which the Government could conceivably identify a compelling interest in remedying past discrimination does not negate the propriety of the nationwide injunctions entered by the *Miller*, *Wynn*, and *Holman* courts because, as previously argued by Plaintiffs in their motions for temporary restraining order and preliminary injunctive relief, even if such justification could be found, the program as passed by Congress would fail the narrow tailoring inquiry. *See* Dkts 14, 19.

9

[pending in the Northern District] appears to be quite slow"). The nine Plaintiffs in this case have already submitted most of the evidence that will be necessary to address the merits of their claims in support of their motion for a preliminary injunction. *See* Dkts. 14, 19. Only limited fact and expert discovery would be necessary prior to the filing of dispositive motions, which would not be needlessly sidetracked by ancillary issues such as the potential for class decertification or the possible need to provide notice to class members.[3]

Undersigned counsel have proposed a schedule that would allow a reasonable time for necessary expert discovery and resolve the merits of the case in a few short months. The *Miller* court, on the other hand, has not yet entered a scheduling order, though the parties have submitted a proposed timeline for the court's consideration. *See Miller*, Dkt. 70. Whether the proposed schedule will be put in place depends, at least in part, on whether Defendants decide to appeal the class certification and preliminary injunction rulings in that court. If Defendants appeal, the timeline will be extended by at least as many weeks or months it will take to brief and argue those appeals and for the Fifth Circuit to issue its decision. *Id.* But even if Defendants decline to appeal and the timeline is adopted exactly as the parties have agreed, the

---

[3] While class actions certified under Rule 23(b)(2) generally do not mandate notice and an opt out opportunity, that presumption is not absolute. See *Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989, 994 (5th Cir. 1981) (describing cases in which notice and opt-out opportunities were provided to a Rule 23(b)(2) class); Fed. R. Civ. P. 23(c)(2)(A) (court may direct appropriate notice to a class certified under Rule 23(b)(2)). Plaintiffs in this case may attempt to opt out of the *Miller* class; while that decision has not yet been made, this Court should not foreclose the ability for Plaintiffs to pursue their claims by staying this action. *See* Section III, *infra*. If Plaintiffs do not or cannot opt out of the *Miller* class, Plaintiffs agree with Defendants that they would be bound by any final judgment so long as the class remains certified and the *Miller* parties and court comply with the procedures in Rule 23. *Cf. Gonzalez v. Litscher*, 230 F. Supp. 2d 950, 957 (W.D. Wis. 2002) (differentiating among those claims afforded preclusive effect by class action and those not included).

soonest that briefing will be completed on summary judgment in that case is April 1, 2022—a full eight months from now—with an uncertain timeframe for decision. *Id.* In addition to this delay, Plaintiffs will suffer prejudice as a result of losing control over the strategic decisions in this litigation if this case is stayed.

### III. Plaintiffs will suffer prejudice if forced to submit to a proceeding over which they have no control.

Another factor courts consider when evaluating a request for a stay is the potential prejudice involved. Defendants focus much of their argument on the alleged drain in the government's vast litigation resources if they are forced to defend more than one proceeding concerning the same law at the same time, but the assessment of prejudice centers on whether the *non-movant* will suffer prejudice or a tactical disadvantage, not inconvenience to the movant. *See, e.g., Panduit Corp. v. Chatsworth Prods., Inc.*, No. 04 C 4765, 2005 WL 577099 at *2 (N.D. Ill. Mar. 2, 2005) (rejecting stay where stay would provide movant with a competitive advantage); *Ignite USA, LLC v. Pacific Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166 at *2 (N.D. Ill. May 29, 2014) (rejecting undue prejudice claim where nonmovant had delayed for two years before filing action); *Herron v. Gold Standard Baking, Inc.*, No. 20-cv-07469 2021 WL 1340804 at *5 (N.D. Ill. Apr. 9, 2021) (granting stay where nonmovant failed to establish prejudice beyond limited delay). Also, while Defendants insist that Plaintiffs will suffer no prejudice if this lawsuit is stayed because they are members of the *Miller* class, once again it is not that simple. The stay in question would require Plaintiffs to surrender all control over the litigation they initiated, against their will.

11

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Plaintiffs who initiate a lawsuit are generally masters of their own litigation. They retain the counsel of their choice, may make a choice to file in one appropriate forum over another for the convenience of the counsel and the witnesses, and will inevitably make other strategic choices during the course of their claim that may affect the outcome. These decisions may include the retention of certain experts, choices concerning the subject matter and methods of discovery, the use of and emphasis on different legal theories and arguments, whether and on what terms to settle, and other tactical decisions that could ultimately have a dispositive effect on the result. Denying Plaintiffs any measure of control over the litigation they initiated takes them out of that role completely. Staying this action means that Plaintiffs and their counsel will be prohibited from providing any input on these important decisions in the litigation, simply because the Northern District of Texas case was filed just three days earlier by a Plaintiff who did not have standing to bring it in the first instance. Such a result is both arbitrary and prejudicial to Plaintiffs.

Additionally, Defendants emphasize that because this is a case of "extraordinary public moment" (a statement with which Plaintiffs agree), Plaintiffs should be required to "submit to delay" in having their claims evaluated by this Court. As an initial matter, the proposed delay is indefinite in duration and so it would be an abuse of discretion to grant such a stay absent a demonstrated, pressing need.

12

*Landis*, 299 U.S. at 255. Defendants' concerns about defending multiple lawsuits does not constitute such a need. *See Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Reservation v. Enbridge Energy Co., Inc.*, 19-cv-602-wmc, 2021 WL 145352 at *4 (W.D. Wis. Apr. 15, 2021) ("multiple courts and trier of facts may vary in their ultimate adjudication of similar claims, but this is no ground to join all such disputes in a single lawsuit").

But, as noted above, delay alone is not what this stay would accomplish. A stay would require Plaintiffs to abide by whatever result someone else's chosen counsel was able or willing to achieve, with no strategic input. Moreover, staying litigation in the various district courts, including this one, would hamstring the inevitable appellate proceedings at either the Court of Appeals level or at the United States Supreme Court, should this issue be taken up by that body. Permitting different district courts to analyze the issues raised in Plaintiffs' complaint and in similar (but not identical) complaints in other venues across the country would provide higher courts with the benefit of additional analysis. *See City of Chicago v. Barr*, 961 F.3d 882, 916-17 (7th Cir. 2020) (discussing limited, appropriate use of nationwide injunctions and cautioning against the "clear potential to narrow the input from different judicial panels").[4]

---

[4] Importantly, the limited circumstances in which the *Barr* court concluded that nationwide injunctive relief would be appropriate do apply here. The court's concern about preventing "percolation through the courts" applies primarily where a nationwide injunction "truncate[s] the process of judicial review, elevating the judgment of a single district court." *Id.* at 916. Given that three different district courts elected to issue such an injunction after considering the issues, the only risk to the process of judicial review in this case comes from Defendants' desire to choose one district court above the others.

13

Although Defendants maintain that staying this litigation would conserve Defendants' resources and those of this Court, that will only occur if *Miller* neatly disposes of all issues Plaintiffs raise in this case. But in light of the limited geographic scope of the named plaintiffs, it is far from clear whether the interests of the class representatives in *Miller* will have interests aligned with those of Plaintiffs in this case. And because the *Faust* Plaintiffs will have no control over the litigation strategy if this case is stayed in favor of *Miller*, they have no ability to ensure that class counsel avoid such errors. This could lead to at least two possible negative outcomes: 1) Plaintiffs' claims being barred under the doctrine of *res judicata* following a proceeding over which they had no control; or 2) assuming Plaintiffs are released from the class before a final judgment is entered, resuming this litigation following a lengthy and unnecessary delay—with the parties and the court expending at least the same resources as would be required if the stay were denied now. The law in this circuit does not compel this inequitable result. Defendants' motion should be denied.

## IV. The cases the government cites in support of its stay motion are distinguishable.

Finally, Defendants point to various cases to support the argument that courts will typically stay litigation where an earlier-filed class action is pending. As an initial matter, none of these cases come from the Seventh Circuit, and they are not binding on this Court. But even considering these cases for their persuasive value, they do not justify staying the proceedings in this case.

14

Defendants place the most emphasis on *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977), where a court of appeals affirmed a district court's decision to stay litigation against a federal agency concerning a subsidy program. At first glance, that case might seem to be similar enough to this one—the plaintiffs had challenged the administration of a federal benefit program in a number of federal district courts across the country, and the court approved of the lower court's discretionary decision to stay proceedings in light of a pending class action. *Id* at 879. But once again, it's not that simple. The procedural posture of that case is easily distinguished from this one. In *Taunton Gardens*, the companion class action at issue had been proceeding for some time and was already culminating in a final judgment by the time the district court action had been filed. *See Underwood v. Hills*, 414 F. Supp. 526 (D.D.C. 1976) (granting summary judgment to plaintiff class in June of 1976) *and Taunton Gardens Co. v. Hills*, 421 F. Supp. 524 (D. Mass. 1976) (staying litigation in October 1976 pending final judgment after plaintiff moved for preliminary relief on the basis of the *Underwood* summary judgment order). In short, the *Taunton Gardens* case was simply a tag-along action filed only after the battle on the merits had already been won. That is not the case here. While the *Miller* plaintiffs have achieved preliminary injunctive relief, Defendants may appeal that order and/or the certification order and it is not the case (as in *Taunton Gardens*) that the ultimate merits have been settled.

The remaining cases that Defendants cite are equally unavailing. For example, in *Jiaming Hu v. U.S. Dep't of Homeland Security*, Case No. 4:17-cv-02363-AGF, 2018 WL 1251911 at **4-5 (E.D. Mo. Mar. 12, 2018), the court stayed the plaintiff's action

15

due to a pending class action because there were no factual variations among the class members that could "impact the overarching questions that are common to the class as a whole." As noted above, the limitations on the geographic distributions of the named class members in *Miller* could well have an impact on one of the primary overarching questions in this litigation—namely, whether Defendants had a compelling interest in remedying past discrimination that could justify Section 1005. The Seventh Circuit in *Blair* cautioned against presuming that the plaintiff's interest in a second case would be properly served by counsel in a previously-filed class action. *Blair*, 181 F.3d at 839.

*Aleman on behalf of Ryder System, Inc. v. Sancez*, Case No. 21-cv-20539-BLOOM/Otazo-Reyes, 2021 WL 917969 (S.D. Fla. Mar. 10, 2021) did not concern a stay at all, but rather a motion to consolidate two cases under Fed. R. Civ. P. 42. The court in *Mackey v. Bd of Educ. for the Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) provided no analysis of its decision to affirm the dismissal of a duplicative claim concerning an individualized education program plan beyond simply stating that the claims were duplicative of another suit. In *Richard K. v. United BeHavioral Health*, 18-cv-6318 (GHW) (BCM), 2019 WL 3083019 at *5 (S.D.N.Y. June 28, 2019), the plaintiffs did not file their complaint until over *four years* after the competing class action had been filed—a stark contrast to the three day differential between *Miller* and this case. None of the cases Defendants cite require this Court to stay these proceedings or suggest that allowing this case to continue would be inappropriate given the circumstances.

16

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to stay these proceedings.

Dated this 2nd day of August, 2021.

        **WISCONSIN INSTITUTE FOR LAW & LIBERTY**

        /s/ *Katherine Spitz*

        Rick Esenberg
        Daniel P. Lennington
        Luke N. Berg
        Katherine Spitz
        **330 East Kilbourn Avenue, Suite 725**
        **Milwaukee, WI 53202**
        **Telephone: (414) 727-9455**
        **Facsimile: (414) 727-6385**
        Rick@will-law.org
        Dan@will-law.org
        Luke@will-law.org
        Kate@will-law.org

        *Attorneys for Plaintiffs*